UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EVA M. MILEY | ) | CASE NO. 1:13CV2157 |
| | ) | |
| Plaintiff | ) | JUDGE DONALD C. NUGENT |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | **OF MAGISTRATE JUDGE** |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant | ) | |

Plaintiff, Eva M. Miley, requests judicial review of the final decision of the Commissioner of Social Security denying her Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his June 29, 2012 decision in finding that Plaintiff was not disabled because she retained the residual functional capacity (RFC) for work at the light exertional level, subject to limitations (Tr. 18). For the following reasons, the undersigned recommends that the Court affirm the decision of the ALJ and enter judgment for the Defendant.

**I.  PROCEDURAL HISTORY**

Plaintiff filed for DIB and SSI on November 16, 2010, alleging a disability onset date of January 5, 2010 (Tr. 204-212). The agency denied Plaintiff's applications initially and on reconsideration (Tr. 145-151, 154-159). Plaintiff requested a hearing before an ALJ, which was held

1

on June 7, 2012, at which a vocational expert (VE) and Plaintiff testified (Tr. 33-80). On June 29, 2012, the ALJ denied Plaintiff's disability claim in a written decision (Tr. 9-32). Thereafter, the Appeals Council denied Plaintiff's request for review (Tr. 1-7). Hence, Plaintiff seeks judicial review of the Commissioner's decision under 42 U.S.C. Section 405(g).

**II.     STATEMENT OF FACTS**

Plaintiff was thirty-six years old on January 5, 2010, her alleged onset date of disability (Tr. 25). She is a high school graduate and has past relevant work as a home health aide and telemarketer (Tr. 25).

In documents submitted to the Agency, Plaintiff reported that she attended to her own personal hygiene, cooked for herself, shopped for herself, and managed her finances (Tr. 320-322).

**III.    SUMMARY OF MEDICAL EVIDENCE**

On appeal, Plaintiff only challenges the mental residual functional capacity as assessed by Dr. Misra (Pl.'s Br. at 1-16). Hence, the undersigned has limited his review to mental health records. Plaintiff began mental health treatment from Lalith K. Misra, M.D. in May of 2009 (Tr. 518-543). Dr. Misra diagnosed attention deficit hyperactivity disorder (ADHD), a mood disorder, an anxiety disorder, and post-traumatic stress disorder (PTSD), and consistently assessed Global Assessment Functioning (GAF) ratings of sixty-five (Tr. 518-543).

On February 2, 2010, the first visit after the alleged onset date of January 22, 2010, Plaintiff was observed as unkempt and disheveled; she was cooperative with loud and pressured speech (Tr. 44). She had fair eye contact (Tr. 544). She had a sad and anxious mood with a constricted affect (Tr.

544). Her mood/thought was congruent, and her thought process was coherent (Tr. 544). She denied suicidal or homicidal ideation (Tr. 544). Plaintiff was alert and oriented to time, place, and person (Tr. 544). Plaintiff exhibited fair attention and concentration with poor insight and judgment (Tr. 545). Dr. Misra diagnosed ADHD, a mood disorder, and a personality disorder (Tr. 545). Dr. Misra also assessed GAF of sixty-five (Tr. 545).

On March 1, 2010, her mental status examination was unchanged, except that Plaintiff's speech was normal and contemporaneous (Tr. 548). Dr. Misra assessed a GAF of sixty-five, and noted that Plaintiff's progress was improved (Tr. 549).

On April 6, 2010, Plaintiff returned to Dr. Misra (Tr. 587-590). Her mental status examination was unchanged, except for fair insight and judgment (Tr. 589). Dr. Misra assessed a GAF of sixty-seven (Tr. 590).

On May 12, 2010, Plaintiff had a GAF of sixty-six (Tr. 557). Dr. Misra indicated that Plaintiff's progress was improved (Tr. 558).

On June 25, 2010, Plaintiff's affect was wide-ranging (Tr. 561). Dr. Misra assessed a GAF of sixty-six (Tr. 562).

On July 29, 2010, Plaintiff had improved mood and anxiety (Tr. 564). Dr. Misra assessed a GAF of sixty-six (Tr. 567). Dr. Misra indicated that Plaintiff's progress was improved (Tr. 567).

On September 9, 2010, Plaintiff reported that she got a new job, taking care of an elderly lady from "9-5" (Tr. 570). In general, Plaintiff was moderately improved (Tr. 570). Dr. Misra assessed a GAF of sixty, and indicated that Plaintiff's progress was improved (Tr. 574).

On October 13, 2010, Plaintiff was moderately improved with improved mood and improved anxiety (Tr. 575). Dr. Misra assessed a GAF of sixty (Tr. 578). He indicated that Plaintiff's progress was improved (Tr. 579).

On December 23, 2010, Plaintiff reported that her medications helped when she was anxious (Tr. 580). Plaintiff was moderately improved (Tr. 580). Dr. Misra assessed a GAF of sixty (Tr. 583).

On January 28, 2011, Plaintiff stated that she was "doing good" (Tr. 644). She told Dr. Misra that her anxiety medication was working (Tr. 644). She added that she did not get angry "like before" (Tr. 644). Plaintiff reported improved insight and judgment, and her family was happier (Tr. 644). Plaintiff was moderately improved (Tr. 647). Dr. Misra assessed a GAF of sixty (Tr. 647). He indicated that Plaintiff's progress was improved (Tr. 648).

On April 7, 2011, Plaintiff stated that she was doing "o.k." (Tr. 649). She stated that she did not believe that her medications were working, but Dr. Misra indicated that her progress was improved (Tr. 649, 653). Dr. Misra assessed a GAF of sixty (Tr. 652).

On May 12, 2011, Plaintiff stated that she was "doing o.k." (Tr. 654). Dr. Misra assessed her a GAF of sixty (Tr. 657). Dr. Misra indicated that Plaintiff's progress was improved (Tr. 658).

On June 9, 2011, Plaintiff stated that she was "not too bad" (Tr. 703). She stated that her sleep was good, and she was doing okay (Tr. 703). Plaintiff was moderately improved with improved mood and anxiety (Tr. 703). Dr. Misra assessed a GAF of sixty (Tr. 706). Dr. Misra indicated that Plaintiff's progress improved (Tr. 707).

On July 7, 2011, Plaintiff stated that her mood was good (Tr. 698). She stated that Geodon medication had been good (Tr. 698). She stated that she did not have mood swings or anger (Tr. 698). She said that she rarely gets upset (Tr. 698). Dr. Misra assessed a GAF of sixty (Tr. 701). Dr. Misra indicated that Plaintiff's progress was improved (Tr. 702).

On August 11, 2011, Plaintiff reported doing "o.k." (Tr. 643). Dr. Misra assessed a GAF of sixty (Tr. 696). He indicated that Plaintiff's progress was unchanged (Tr. 697).

On September 7, 2011, Plaintiff reported that some days she was depressed, but, overall, she was doing better (Tr. 688). Dr. Misra assessed a GAF of sixty (Tr. 691). He indicated that Plaintiff's progress was improved (Tr. 692).

On October 19, 2011, Plaintiff reported that she was "doing pretty good and sleeping good" (Tr. 683). She stated that everything seemed okay (Tr. 683). Plaintiff was moderately improved (Tr. 683). Dr. Misra assessed a GAF of sixty (Tr. 686). He indicated that Plaintiff's progress was improved (Tr. 687).

On November 18, 2011, Plaintiff reported that her medications were working (Tr. 766). Dr. Misra assessed a GAF of sixty, and indicated that Plaintiff's progress was unchanged (Tr. 768-769).

Plaintiff continued to follow up monthly with Dr. Misra through February of 2012 (Tr. 754-765). Dr. Misra consistently assessed GAF ratings of sixty (Tr. 756, 759, 764, 768). Plaintiff reported family stressors related to her husband and teenage daughter, but also indicated that she was "doing fine," "doing good," and everything was okay (Tr. 754, 758, 762).

In March and September 2011, state agency medical consultants opined that Plaintiff could understand and recall instructions for simple repetitive tasks, and that she could carry out instructions for simple repetitive tasks in settings that are routine and relatively static (Tr. 81-108, 111-142). The state agency medical consultant further opined that Plaintiff could perform work tasks that do not require interaction with the public and require minimal social interactions with supervisors and co-workers (Tr. 81-108, 11-42).

On November 11, 2011, Dr. Misra completed a Mental Impairment Questionnaire (Tr. 747-752). Dr. Misra indicated that Plaintiff was responding to medications with no side effects (Tr. 747). He indicated that her prognosis was guarded (Tr. 747). Dr. Misra opined that Plaintiff was unable to

5

meet competitive standards for unskilled, semi-skilled, or skilled work (Tr. 749-752). She further opined that Plaintiff was unable to function outside her home, and that Plaintiff would miss more than four days of work per month (Tr. 751-752).

## IV. THE ALJ'S DECISION

In a written decision, on June 29, 2012, the ALJ denied Plaintiff's disability claim (Tr. 9-32). The ALJ concluded that Plaintiff retained the residual functional capacity (RFC) for work at the light exertional level, but subject to limitations (Tr. 18). Specifically, Plaintiff could frequently balance; occasionally stoop and climb ramps and stairs; and never climb ladders, ropes, or scaffolds (Tr. 18). She could perform handling and fingering bilaterally (Tr. 18). She should avoid even moderate exposure to unprotected heights and concentrated exposure to extreme height and irritants, such as fumes, odors, dusts, gases, and poorly-ventilated areas (Tr. 18). Plaintiff could perform simple, routine, and repetitive tasks (Tr, 18). She could perform low stress jobs, defined as requiring only occasional changes in the work setting (Tr. 18). Plaintiff could have no interaction with the public, but could have occasional interaction with co-workers and supervisors (Tr. 18). At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work (PRW) as a home health aide and telemarketer (Tr. 25). The ALJ concluded, however, that Plaintiff could perform other work that exists in significant numbers in the national economy, including representative jobs of hand laborer; sorter, tester, or inspector; and production assembler (Tr. 26). The ALJ's decision became the final decision of the Commissioner on August 1, 2013, when the Appeals Council denied Plaintiff's request for review (Tr. 1-7). Plaintiff seeks judicial review of the Commissioner's decision under 42 U.S.C. Section 405(g).

### V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits and supplemental security income. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c) and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## **VI. STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## **VII. SUMMARY OF TESTIMONY**

Plaintiff testified at the administrative hearing before the ALJ that she has problems with memory (Tr. P. 43-44). At her previous job at a call center, she yelled at her boss, her co-workers, and people on the phone (Tr. P. 44). She said she "[couldn't] take the pressure." (Id.). During the course of the hearing, her chest hurt due to anxiety. (Id.). She has had a hard time maintaining jobs for any length of time, due to her having trouble getting along with people (Tr. P. 46). She has been

terminated from jobs due to yelling at co-workers (Tr. P. 48). She has frequent suicidal thoughts (Tr. P. 56). She is irritable (Tr. P. 57). She pulled her daughters out of school to be home-schooled, in part because she did not like going to the school, and because she had previously yelled at one of the teachers (Tr. P. 57-58). She often has others go to the grocery store for her (Tr. P. 58). She was recently in a J.C. Penney for five minutes, and had to leave to go sit in the car due to panic symptoms (Tr. P. 59). She has trouble following the plot of movies (Tr. P. 63). She has no friends (Tr. P. 64).

Thereafter, the ALJ asked the VE to assume a hypothetical individual the same age, education, and previous experience as Plaintiff, with the RFC to perform work at the light exertional level, but subject to limitations (Tr. 26). The hypothetical individual could frequently balance; occasionally stoop and climb ramps and stairs; and never climb ladders, ropes, or scaffolds (Tr. 26). She could perform frequent handling and fingering bilaterally (Tr. 26). She should avoid even moderate exposure to unprotected heights and concentrated exposure to extreme height and irritants, such as fumes, odors, dusts, gases, and poorly-ventilated areas (Tr. 26). Plaintiff could perform simple, routine, and repetitive tasks (Tr. 26). She could perform low stress jobs, defined as requiring only occasional changes in the work setting (Tr. 26). Plaintiff could have no interaction with the public, but could have occasional interaction with co-workers and supervisors (Tr. 26). The VE testified that the hypothetical individual could do work that exists in significant numbers in the national economy, including representative jobs of hand laborer; sorter, tester, or inspector; and production assembler (Tr. 26).

## **VIII. ANALYSIS**

The sole issue in this case is whether substantial evidence supports the Commissioner's decision that the opinion of treating physician, Dr. Misra, was not entitled to controlling weight.

In her brief, Plaintiff argues that the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Misra (Pl.s Br. at 1-16). First, there needs to be discussion about the RFC determination by th ALJ. The RFC refers to what a claimant can still do despite her limitations. 20 C.F.R. Sections 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of her own limitations. 20 C.F.R. Sections 404.1545(a), 416.945(a). Since the RFC is based on all of the evidence, the ALJ is not limited to choosing between competing opinions in the record. Therefore, he is allowed to develop his own RFC. Id. The final responsibility for determining a claimant's RFC is reserved to the Commissioner. 20 C.F.R. Sections 404.1527(d)(2), (d)(3), 416.927(d)(2), (d)(3).

Based upon the record, the ALJ determined that substantial evidence did not support Dr. Misra's opinion that Plaintiff was unable to meet competitive standards for unskilled, semi-skilled, or skilled work; was unable to function outside her home; and would miss more than four days of work per month (Tr. 749-752). In accordance with the regulations and the law, the ALJ gave valid reasons for rejecting Dr. Misra's opinion (Tr. 24). Hence, the undersigned determines that substantial evidence supports the ALJ's reasons for giving less than controlling weight to the opinion of Dr. Misra.

The regulations provide that the ALJ may discount the opinion of a treating physician where the opinion is not well supported by medically-accepted clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence of record. 20 C.F.R. Sections 404.1527(c)(2), 416.927(c)(2). The Sixth Circuit has held that physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*

*v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994).

Furthermore, the regulations provide that the opinion of any particular physician, treating or otherwise, is not determinative of the issue as to whether a claimant is disabled within the meaning of the Act. 20 C.F.R. Sections 404.1527(d)(1), 416.927(d)(1). This finding is a legal decision that is to be determined by the Commissioner. 20 C.F.R. Sections 404.1503, 416.903.

The undersigned finds that there are not sufficient objective findings to support the limitations assessed by Dr. Misra (Tr. 24). 20 C.F.R. Sections 404.1527(c)(2), 416.927(c)(2). Dr. Misra's limitations were not even supported by his own findings and observations (Tr. 24). Even though Dr. Misra found Plaintiff to be unkempt and disheveled in appearance, loud and pressured speech; sad and anxious mood with constricted affect; and fair to poor insight and judgment, her other findings did not support her assessment (Tr. 544, 548, 555-556, 560-561, 565-566, 571-572, 576-577, 581-582, 588-589, 645-646, 650-651, 655-656, 684-685, 689-690, 694-695, 699-700, 704-705, 755-756, 759-760, 763-764, 767-768). Plaintiff was cooperative and made fair eye contact (Tr. 544, 548, 555, 560, 565, 571, 576-577, 581-582, 588-589, 645-646, 650, 655, 684-685, 689-690, 694-695, 699-700, 704-705, 755, 759, 763, 767). Her mood/thought was congruent and her thought process was coherent (Tr. 544, 548, 556, 561, 572, 577, 582, 588-589, 646, 651, 656, 685, 690, 695, 700, 705, 755, 759, 763, 767). Plaintiff denied suicidal or homicidal ideation (Tr. 544, 548, 556, 561, 566, 572, 577, 582, 588-589, 646, 651, 656, 685, 690, 695, 700, 705, 755, 759, 763, 767). She was alert and oriented to time, place, and person (Tr. 544, 548, 556, 561, 566, 572, 577, 582, 588-589, 646, 651, 656, 690, 695, 700, 705, 755, 759, 763, 767). Although Dr. Misra opined that Plaintiff's prognosis was guarded, most of her treatment notes indicated that Plaintiff's progress was improved or unchanged (Tr. 549, 558, 564, 567, 579, 653, 658, 692, 697, 702, 707, 761, 769). In addition, Dr. Misra consistently assessed GAF

ratings between sixty and sixty-seven, indicating mild symptoms (Tr. 549, 557, 562, 567, 574, 579, 583, 590, 648, 657, 686, 696, 701, 706, 756, 759, 764, 768).

Also, Dr. Misra's opinion was not supported by Plaintiff's reported functional abilities and symptoms (Tr. 18-19). Notwithstanding her functional impairments, Plaintiff was generally moderately improved (Tr. 564, 575, 580, 647, 683, 698, 703). She stated that her medications were helping her (Tr. 580, 644, 698, 766). Plaintiff reported that some days she was depressed, but, overall, she was doing better (Tr. 688). She stated that she did not have mood swings or anger (Tr. 698). She said that she rarely gets upset (Tr. 698). On several occasions, Plaintiff reported that she was doing well, doing okay, or sleeping well (Tr. 643-644, 649, 683, 688, 703, 754, 758, 762). Furthermore, Plaintiff told Dr. Misra that she got a new job, taking care of an elderly lady from "9-5" (Tr. 570). The undersigned concludes that substantial evidence supports the reasoning of the ALJ for not giving controlling weight to the opinion of Dr. Misra.

## **IX.    CONCLUSION**

Based upon a review of the record, the briefs of the parties, and the law and analysis provided above, the undersigned recommends that this Court affirm the decision of the ALJ. In the opinion of the undersigned, substantial evidence supports the finding that Plaintiff retained the residual functional capacity to perform a significant number of jobs, despite the limitations caused by her mental impairments, and, therefore, she is not disabled. Hence, the undersigned recommends that the Court

find that she is not entitled to DIB and SSI, and affirm the decision of the Commissioner of Social Security and dismiss Plaintiff's complaint with prejudice.

Dated: February 12, 2015  */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See*, *United States v. Walter*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985); and Local Rule 72.3.